IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ANN M. HIGGINBOTHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:17-cv-619-GMB |
| | ) | [wo] |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

On January 30, 2014, Plaintiff Ann Higginbotham applied for Supplemental Security Income benefits alleging her disability began on March 19, 2004. R. 22 & 158–163. Her application was denied initially and on reconsideration. R. 112–26, 127 & 128–31. Upon a timely request, Plaintiff provided testimony by phone at an administrative hearing held on May 2, 2016. The hearing was held before Administrative Law judge Ricky V. South. R. 37–79. The ALJ rendered an unfavorable decision on May 25, 2016. R. 16–35.

Thereafter, the Appeals Council denied Plaintiff's request for review. R. 1–6. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). R. 1–6. Judicial review proceeds pursuant to 42 U.S.C.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

§ 405(g) and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the court concludes that the Commissioner's decision is to be AFFIRMED.

## I. NATURE OF THE CASE

Higginbotham seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The Court may affirm, reverse and remand with instructions, or reverse and render a judgment.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla—that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440

(11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). The court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The court also reverses a Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

## III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a) & 1382c(a)(3)(A)–(C). However, despite the fact that they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical, so claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act, which is defined in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3) & 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a) & 416.905(a). A person is entitled to disability benefits when the person is unable to

> [e]ngage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). A "physical or mental impairment" is one

resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3) & 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520 & 416.920 (2010).

  (1)   Is the person presently unemployed?
  (2)   Is the person's impairment(s) severe?
  (3)   Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
  (4)   Is the person unable to perform his or her former occupation?
  (5)   Is the person unable to perform any other work within the economy?

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.*

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a *prima facie* case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy the claimant can perform. *Id.* To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238–39. RFC is what the claimant is able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It

5

may contain both exertional and nonexertional limitations. *Id.* at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ either usea the Medical Vocational Guidelines (the "grids") or may receive testimony from a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor independently can limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a finding of "Disabled" or "Not Disabled." *Id.*

### IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was born on May 1, 1968. R. 158. She has an eighth-grade education with past relevant work as a housekeeper. R. 235. The ALJ found that Plaintiff had severe impairments of depression, along with back and hip pain, but that she did not have an impairment or combination of impairments listed in or medically equal to one listed in the regulations. R. 22. The ALJ expressly found that Plaintiff's statements regarding her subjective symptoms were not consistent with the objective medical and other evidence in the record. R. 24–27. The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform the physical exertion and nonexertional requirements of light work except that Plaintiff could sit or stand every 30 minutes, occasionally stoop, balance, kneel, crouch or crawl. R. 24. The ALJ found Plaintiff should never climb ladders, ropes or scaffolds, but could occasionally push or pull with the upper and lower extremities,

6

bilaterally. R. 24. The ALJ concluded that Plaintiff should avoid concentrated exposure to cold, heat, wetness, humidity, vibrations, noise, and pulmonary irritants such as fumes, odors, dust, and gas. R. 24. The ALJ determined Plaintiff should avoid all exposure to unprotected heights, dangerous machinery, and uneven surfaces and would need one to two unplanned absences per month. R. 24. The ALJ limited Plaintiff to unskilled low-stress work with no more than simple, short instructions and simple work-related decisions with few workplace changes. R. 24. The ALJ found Plaintiff could occasionally interact with the public, supervisors, and coworkers, but would be unable to work in close proximity to others due to her lack of concentration. R. 24.

Based on VE testimony, the ALJ found that Plaintiff could not perform past relevant work but could perform other work in the national economy. R. 28 & 74–75. This other work included the jobs of laundry sorter, folder, and packer. R. 28–29. Thus, the ALJ found Plaintiff was not disabled. R. 29.

## V. MEDICAL HISTORY

On March 28, 2014, at the request of the Social Security Administration, Plaintiff presented to Scott J. Stewart, Ph.D. for a psychological examination. R. 472–77. Dr. Stewart noted that Plaintiff reported a history of childhood physical and sexual abuse and that she was molested at home. R. 473. Treatment records from East Alabama Mental Health also noted that Plaintiff reported childhood sexual abuse. R. 451. Dr. Stewart noted that Plaintiff began experiencing mental health difficulties in 1978 at the age of 10. R. 474. He further reported that she has been hospitalized multiple times for psychiatric

7

problems, including at East Alabama Mental Health, West Central Georgia, and the Bradley Center, with an accompanying diagnosis of Bipolar I Disorder. R. 474.

Indeed, Plaintiff was admitted to the Bradley Center on August 15, 2017, where she was seen by Dr. Arvind Patel, who noted that she reported being "confused, angry, frustrated. She has highs and lows. She has difficulty sleeping at night, she feels very tired and has no motivation, no energy." R. 315. He diagnosed her with "Bipolar depression, depressed, severe, with psychotic features by history." R. 316. Dr. Patel recommended that she remain in the facility for five to seven days. R. 317. Similarly, progress notes from the East Alabama Mental Health documented the following symptoms: sadness for most of the day, loss of interest, low energy level, talk of death or suicide, worrying excessively, and decreased emotional expression. R. 439.

Upon an examination of Plaintiff's mental status, Dr. Stewart reported the following observations:

> Mood was described as anxious and depressed. She reported problems with anxiety and worry. She worries about everything. Ms. Higginbotham reports symptoms associated with Posttraumatic Stress Disorder. She reports hypervigilance and an exaggerated startle response. She reports sleep that is significantly disrupted by nightmares of traumatic experiences in her life. As a result of this disruption, she reports getting approximately 4 hours of sleep per night. She reports that her daily thoughts are often interrupted by thoughts of her experiences, and that she avoids things that are likely to remind her of the traumatic events in her life.
>
> She reported periods of depression lasting for three to four months. She reported vegetative signs of depression, which included difficulty sleeping, poor appetite, lowered self-esteem, diminished motivation, and anhedonia. She did not report symptoms associated with mania, such as depressed need for sleep and euphoria. She reported a history of suicidal ideation. She is not currently in treatment and demonstrates limited insight regarding her problems.

R. 475. Dr. Stewart's diagnostic impression was Posttraumatic Stress Disorder, Major Depressive Disorder, recurrent severe without psychotic features, and Borderline Personality Disorder. R. 476. Dr. Stewart also expressed the following opinions:

> Ms. Higginbotham was able to understand the basic directions and intent of the examination. She appears to have limitations with the interpersonal skills required to relate to others in a work setting. She appears to have some limitations with the ability to sustain the attention needed to do repetitive tasks, and *lacks the ability to handle the day-to-day pressures of a work environment.* She appears capable of managing her own funds as she has the minimal level of general intelligence, basic skills in arithmetic, and social judgment that is consistently needed. She is presenting with symptoms associated with PTSD and Major Depressive Disorder. She also demonstrates a number of features associated with Borderline Personality Disorder. Prognosis is poor for a favorable response to treatment within the next 6 to 12 months. She is motivated for treatment and fully cooperative with the examination process. It is felt that the information received during this evaluation, and upon which this report is based, is fully reliable.

R. 475–76 (emphasis added).

## VI. ISSUES PRESENTED

1. Whether the ALJ erred by failing to provide adequate rationale addressing the medical opinions of consultative psychological examiner, Dr. Scott Stewart?

2. Whether the ALJ erred by failing to pose a complete hypothetical to the VE?

## VII. ANALYSIS

### A.    Dr. Stewart's Opinion

Plaintiff argues that the ALJ erred because he failed to provide any reasons for deciding not to accept Dr. Stewart's medical opinion that Plaintiff lacked the ability to handle the day-to-day pressures of a work environment. R. 475. Indeed, the court recognizes that it is reversible error for an ALJ to fail to articulate the weight given to a

non-treating physician opinion or the grounds for discounting the report. *McClurkin v. Soc. Sec. Admin.,* 625 F. App'x 960 (11th Cir. 2015). However, the law does not require an ALJ to address every piece of evidence in the opinion. *See Newberry v. Comm'r Soc. Sec. Admin.,* 572 F. App'x 671, 672 (11th Cir. 2014) (affirming even though the ALJ did not discuss doctor's finding that Plaintiff would need to lie down at times throughout the workday).

With respect to the medical opinions expressed by Dr. Stewart, the ALJ found the following:

> As for the opinion of Dr. Scott Stewart, the undersigned has given his opinion *some weight*. Dr. Stewart diagnosed the claimant with posttraumatic stress disorder (PTSD); major depressive disorder, recurrent severe without psychotic features; borderline personality disorder; and a global assessment [of] functioning score (GAF) of 50. Dr. Stewart's opinion is based on the claimant's subjective complaints and the evidence of record.

R. 27 (emphasis added). Furthermore, the ALJ specifically addressed Plaintiff's severe depression as follows:

> She has been treated at The Bradley Center and East Alabama Mental health for anxiety and depression. In addition, she testified that the reason she is unable to work is due to depression. While the undersigned has considered the impairment severe, it is not considered to be disabling because the evidence or record reveals she is being treating [sic] with medication for the impairment and it has helped. Furthermore, the evidence reveals that the claimant has received generally no treatment for her impairment since December 2011, when she reported to Midtown Medical Center for refill of her medication. (Exhibit 6F). In addition, there have been generally no hospitalizations for treatment for the impairment since 2011. Moreover, the evidence reveals that the claimant is mentally able to care for her own activities of daily living.

R. 26.

After carefully reviewing the ALJ's opinion and the evidence as a whole, the court concludes that even though the ALJ did not specifically discuss Dr. Stewart's finding that Plaintiff could not handle the day-to-day pressures of a work environment, he did clearly articulate the weight given to Dr. Stewart's opinion and his reasons for discounting it. Specifically, the ALJ gave Dr. Stewart's opinion "some" weight, but noted that his conclusions were based in part on Plaintiff's subjective statements. R. 27. *See Lacina v. Comm'r of Soc. Sec.,* 606 F. App'x 520, 528 (11th Cir. 2015) (holding that an ALJ may discount a physician's opinion where the physician "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant"). Moreover, as recited above, the ALJ relied on Plaintiff's lack of recent treatment or hospitalizations for depression, evidence that medication was helping her depression, and evidence that Plaintiff could daily care for herself in his decision to assign only some weight to Dr. Stewart's opinion. R. 26. The law is clear that an ALJ may discount the opinion of any physician if objective medical signs and diagnostic testing do not support it or if the opinion is inconsistent with the record as a whole. *See* 20 C.F.R. § 416.927(c); *Crawford v. Comm'r of Soc. Sec.,* 363 F. 3d 1155, 1158 (11th Cir. 2004).

Indeed, after a three-year treatment hiatus, Plaintiff again sought treatment with Dr. Patel in October 2010 and requested pain medications. Dr. Patel reported being hesitant to prescribe medication for her because "[s]he often lies" about her medication regiment, so he did not want to take the chance of over-prescribing for her. R. 342. He agreed to write Plaintiff one prescription but noted, "I will not see her back again in my office. She needs to see another doctor or she can go to Birmingham. This patient appears to be

11

addicted to those medications and she cannot be detoxed." R. 342. Dr. Patel also noted that Plaintiff reported that she was depressed but "did not ask for any medication for depression." R. 342.

Furthermore, in February 2011, Plaintiff underwent a psychosocial assessment at the East Alabama Mental Health Center. R. 345–57. She denied any current problems, but reported a history of suicidal ideation and depression. R. 350. She also indicated that she did not need any assistance. R. 355. On examination, Plaintiff's affect, orientation, thought process, perceptions, memory, and insight/judgment were normal. R. 350–51. The evaluation yielded no current mental health diagnosis. R. 352. No services or referrals were provided to Plaintiff and she was rated as "not at all ill" on an estimate severity of illness. R. 357. As the ALJ noted, Plaintiff's next mental health treatment was in December 2011, when she reported to Midtown Medical Center for a refill of her medication. R. 459.

Also, the ALJ relied upon the report of Dr. Estock, a psychiatrist who reviewed all the medical evidence of record, including Dr. Stewart's report. R. 26–27. Dr. Estock concluded that Plaintiff had mild limitations in activities of daily living and moderate limitations in maintaining social functioning and maintaining concentration, persistence or pace. R. 117–19. The ALJ concluded that the medical evidence supported Dr. Estock's assessment and incorporated those functional limitations into his RFC assessment. R. 24 & 27. Thus, the court concludes that the ALJ adequately addressed Dr. Stewart's opinions.

**B.     VE Hypothetical**

Next, Plaintiff argues that the ALJ failed to include in the hypothetical to the VE all established functional limitations. Although the hypothetical must include all of a claimant's impairments, it need not include impairments properly rejected by the ALJ. *See Crawford*, 363 F. 3d at 1161 (holding that an ALJ is not required to include findings in a hypothetical that the ALJ has properly rejected as unsupported). For the reasons described above, the court concludes that the ALJ properly rejected Dr. Stewart's limitation on handling day-to-day pressures in the workplace. Thus, this limitation was properly excluded from the hypothetical. Accordingly, the court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled.

## VIII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, it is ORDERED that the court AFFIRMS the Commissioner's decision.

A separate judgment is entered herewith.

DONE on the 1st day of February, 2019.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE